**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| ADAM HEASTER, Individually and For Others Similarly Situated, | **Case No. 2:19-cv-01463-MPK** |
| v. | Jury Trial Demanded |
| EQT CORPORATION | FLSA Collective Action<br>Rule 23 Class Action |

**HEASTER'S MOTION FOR CLARIFICATION**
**AND REQUEST FOR TELEPHONIC HEARING**

**1.      Procedural Background.**

In this wage and hour class/collective action, Adam Heaster alleges EQT treated its "landmen" as employees under the FLSA but did not pay them overtime. Doc. 1. EQT obtained its landmen from various vendors (including DPS Land Services, LLC (DPS)). And EQT says these vendors have information relevant to the hours worked by, and wages paid to, the landmen who performed services for EQT (all of which Heaster alleges qualifies as EQT's employees). Doc. 1.

In the Joint Rule 26 Report, EQT took the position that mediation be limited to Heaster's claims alone, and that "initial disclosures should be limited to the information in Defendant's possession, custody, and control as it pertains to Plaintiff and those other potential class members who performed services on Defendant projects through Percheron [who staffed Heaster to EQT] only." Doc. 16.  However, as recorded in its Minute Entry Order, the Court ordered EQT to "produce names of third party contractors who provided landmen to EQT/Rice [and] the names of all landmen and the pay data for all landmen for the relevant time period." Doc. 19 at ¶ 3. Discovery was also discussed at the hearing, and the Court recognized that this discovery "may also include third party contractors." *Id.* at ¶ 5. Neither discovery nor disclosures were limited to Heaster, or only those landmen staffed to EQT through Percheron. *Id.*

The parties agreed to mediate the dispute regarding EQT's landmen.[1] Therefore, Heaster and EQT[2] need the relevant payroll data to understand the scope of damages alleged by EQT to its landmen. They both issued subpoenas to EQT's vendors regarding landmen who performed services for EQT (that is, for the proposed class).  One of EQT's vendors, DPS, received a subpoena around February 21, 2020. But unlike other vendors, DPS objected, claiming the requests were burdensome, overly broad, irrelevant, and vague.[3] Doc. 36-2; Doc. 39. DPS argued payroll data was not necessary for the mediation because Heaster was not employed by DPS. Doc. 39 at 1. This argument is inapposite however; Heaster is challenging how **EQT** treated the landmen who performed services for it. And everyone agrees Heaster is a landman who provided services to an EQT entity and that other landmen came from a variety of EQT vendors (of which DPS is merely one). Therefore, Heaster's discovery requests relate to EQT landmen (regardless of which vendor supplied them).

DPS also suggested this discovery was irrelevant to Heaster's dispute with EQT because Heaster signed an arbitration agreement covering an EQT company. Doc. 39 at 1-2. This matter is still pending before the Court. DPS provides no case law suggesting that the mere existence of an arbitration agreement renders a request irrelevant or burdensome. Moreover, despite the alleged arbitration agreement, both Heaster and EQT agreed this discovery was relevant and to seek it from DPS. *See* Doc. 23.  DPS's obligation to respond to discovery does not turn on whether Heaster and EQT previously agreed to arbitrate when they subsequently agreed to seek this discovery. *Cf. Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 709 (7th Cir. 1994) ("short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes").

---

[1] This mediation is still going forward, though via teleconference. *See* Doc. 42.
[2] EQT claims its vendors possess this information.
[3] DPS also contended that the information would be more efficiently obtained from EQT, despite EQT's denial on this subject.

The Court nonetheless denied Heaster's Motion to Compel. Doc. 40. The Court found Heaster could not show "the relevance of pay information from a vendor that never contracted with or employed him." *Id.* at 3. But the allegations in this case deal with **how EQT** treated it landsmen. EQT says some of the records related to these workers (e.g., records of the hours worked and the wages paid) are in the vendors hands, not EQT's. *See* Doc. 23. In thes sense, DPS is merely a custodian of relevant records related to Heaster's claim that EQT failed to treat and pay its landmen in accordance with the FLSA.  Pre-certification discovery related to putative class members is relevant and necessary for Heaster and EQT to mediate in good faith.

This Court's prior Minute Entry Order recognizes Heaster's immediate need for the identity and payroll data these subpoenas seek, and recognizes that discovery from these third-party vendors may be necessary for Heaster's claims. Yet the Court denied Heaster's attempts to obtain discovery from DPS (and shortly, other vendors) in anticipation of mediation. Heaster therefore respectfully asks the Court for clarification as to when such class-related discovery becomes relevant and what burden a third party must establish to withhold information related to EQT's liability to the putative class members.

**2.      Class-related discovery is relevant pre-certification.**

Heaster contends the discovery he seeks from DPS is available to him, regardless of whether he, individually, performed work for the perhaps dozens of vendors utilized by EQT, or whether conditional certification has been granted.  This position is well founded in cases from this Circuit and District, which routinely allow class discovery as to potential opt-in plaintiffs, even prior to granting conditional certification or in anticipation of mediation. *See*, *e.g*, *Boes v. Applied Analysis Corp.*, No. 19-cv-00505, Doc. 30 (E.D. Pa. July 23, 2019) (ordering discovery regarding the number of individuals paid straight time for overtime, pay stubs, payroll records, time sheets, contracts, and offer letters regardless of operator or managed service provider); *Hobbs v. System One Holdings, LLC*, 2:18-cv-00181-

CRE, Doc. 60 (W.D. Pa. Feb. 5, 2019) (ordering employer to produce "summary data for all the salary-offer letter workers, including the total number of salary-offer letter individuals, the average hourly rate, the average overtime hours worked in a week, the average number of times each workers' pay dipped below the salary guarantee and the number of workers by job title/client" prior to conditional certification); *Larsen v. Edgemarc Energy Holdings, LLC*, No. 2:18-cv-01221-MPK, Doc. 17 (W.D. Pa. Nov. 8, 2018) (ordering the employer to produce payroll and workweek data for entire putative class prior to conditional certification with one representative plaintiff and one opt-in plaintiff); *Fritchman v. Schlumberger Tech. Corp.*, No. 2:16 -cv-01752-CRE, Doc. 52 (W.D. Pa. Dec. 21, 2017) (ordering depositions and discovery on reclassification of workers, job postings, organizational charts, identity and contact information of putative class members, and Dept. of Labor misclassification investigations); *Kolasa v. BOS Solutions*, No. 2:17-cv-01087-NBF-MPK, Doc. 28 (W.D. Pa. Nov. 6. 2017) (ordering defense counsel to provide, pre-certification and pre-ADR, information for "all solids control technicians" and noting that "[i]t is expected that the first two categories of information will need to be obtained from third party providers by Defendant"); *Thompson v. Real Estate Mortg. Network, Inc.*, No. 11-1494 (KM) (MAH), 2017 WL 1157859, at *3 (D. N.J. Mar. 28, 2017) (ordering employer to produce to a single plaintiff the names, addresses, home telephone number, email address, job titles, dates of employment, company name, and work location of any and all underwriters, closers, and HUD reviewers" prior to conditional certification); *Kirk v. DR Wellsite Servs., LLC,* No. 1:15-cv-00116-BR, Doc. 48 (W.D. Pa. Sept. 18, 2015) (holding in a pre-certification ADR order that "the Court understands that the exchange of compensation information on a class basis is necessary for good faith mediation to occur"); *Justison v. McDonald's Corp.*, No. 08-448-JJF, 2010 WL 2382604, at *3-4 (D. De. June 11, 2010) (requiring employer to provide a list containing the names and contact information of all individuals allegedly subjected to the employer's uniform misclassification policy); *Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2007 WL 7261450, at *1, n.1 (D. N.J. July 30, 2007) (finding "the focus

is whether or not the employees were impacted by a common policy," and thus "discovery aimed to gather information about this subject is relevant … even before the collective action is certified" and ordering employer to produce the names, addresses, positions, and titles of other workers allegedly impacted by the employer's policy in a case involving a single plaintiff).[4]

In fact, courts across the country typically allow this type of class discovery before certification is granted. *See*, *e.g.*, *Klapatch v. BHI Energy I Power Servs., LLC*, No. 18-CV-11581-RGS, Doc. 45 (D. Ma. Feb. 22, 2019) (ordering production of information and documents relating to all individuals paid straight time for overtime, regardless of the service provider or customers they worked for, prior to conditional certification); *Hall v. Dominion Energy, Inc.*, No. 3:18-cv-00321-JAG, Doc. 65 (E.D. Va. Dec. 20, 2018) (denying employer's motion for protective order and ordering pre-conditional discovery concerning all employees paid straight time for overtime regardless of which subsidiary or vendor they worked through where there was only one representative plaintiff); *Briones v. Kinder Morgan, Inc.*, No. CV H-15-2499, 2016 WL 6804862, at *5 (S.D. Tex. Nov. 17, 2016) (ordering employer to provide the names, last known personal addresses, all known telephone numbers, and dates of employment/work of all putative class member prior to certification);[5] *Young v. Dollar Tree Stores, Inc.*, 2012 WL 1719792,

---

[4] *See also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 145 (3d Cir. 2014); *Spellman v. Visionquest Nat'l*, No. 96-235E, 1998 WL 1997458, at *1 (W.D. Pa. Feb. 13, 1998).

[5] *See also Zaniewski v. PRRC Inc.*, No. 3:11-CV-01535 CSH, 2012 WL 996703, at *1 (D. Conn. Mar. 22, 2012) ("Pre-certification discovery of potential class lists is favored by most cases considering the question, within the contexts of Rule 23, FLSA, or both."); *Parker v. ABC Debt Relief, Ltd. Co., et al.*, No. 3-10-CV-1332-P, 2011 WL 13156847, at *3 (N.D. Tex. Aug. 15, 2011)(noting because of "the remedial purpose of the FLSA and the broad scope of discovery under Rule 26," discovery relating to potential opt-in-plaintiffs is both relevant and appropriate even prior to conditional certification); *Sedtal v. Genuine Parts Co.*, No. CIV.A. 1:08-CV-413-T, 2009 WL 2216593, at *7 (E.D. Tex. July 23, 2009)(Allowing Plaintiffs to discover this [Putative Class] information at this time may help them demonstrate that a sufficient number of similarly situated plaintiffs exist to conditionally certify the action."); *Helmert v. Butterball, LLC*, No. 4:08-CV-00342-JLH, 2008 WL 5272959, at *1 (E.D. Ark. Dec. 15, 2008)(records showing the full names, addresses, telephone number, and job titles of each production company employee for the three years preceding the date of filing were relevant and reasonably calculated to aiding discovery of similarly situated potential collective action members).

at *1-2 (D. Colo. May 11, 2012) (finding employee's pre-certification discovery seeking class information, including names and contact information, sought relevant information and the need for discovery outweighed any minimal invasion of privacy); *Acevedo v. Ace Coffee Bar, Inc.,* 248 F.R.D. 550, 553–554 (N.D. Ill. 2008) (holding conditional certification is not a prerequisite for conducting discovery or for defining the proposed class); *Hammond v. Lowes Home Centers, Inc.*, 216 F.R.D. 666, 673 (D. Kan. 2003) (emphasizing that district courts have "almost universally permitted" class discovery, including names and contact information, and explaining that "at a minimum Plaintiffs should be entitled to discover the names and address of other potentially similarly-situated employees of Defendant" pre-certification). A plaintiff need not establish either conditional certification or consent to opt in before this type of information to be relevant and discoverable to his claims. The issue here is how EQT paid its landman. DPS did not contest that it has information pertinent to this issue nor did it demonstrate any undue burden or cost associated with production. This type of class discovery is relevant and discoverable, regardless of the entity in possession or control.

*Ceuric v. Tier One, LLC*, 325 F.R.D. 558, 561 (W.D. Pa. 2018) does not conflict with the overwhelming case law that holds class-related discovery is relevant or proportional. In *Ceuric*, the parties agreed to conditional certification and notice was approved by the Court. *See Ceuric v. Tier One, LLC*, 2:17-cv-01240-RCM at Docs. 16, 31 (W.D. Pa. Jan. 4, 2018). Ceuric subsequently issued a subpoena and then a motion to compel against BOS Solutions, one of Tier One's clients, seeking information related to Tier One's pay practices. In applying the Rule 26 standard, the Court found that "[t]he discovery sought is relevant to Plaintiff's claims and it provides a list of materials to be produced. Thus, BOS has not demonstrated that the subpoena is unduly burdensome or meant to harass." 325 F.R.D. at 562.

As noted by the *Ceuric* court, the plaintiff did not contest BOS's objection to providing class-related discovery from non-opt-ins. *Id.* It therefore sustained BOS's objection and limited production

to what the Court assumed was the scope of the subpoena: information related only to class members who had opted into the lawsuit. *Id.* at 562-63. But nothing in *Ceuric* stands for the proposition that only discovery related to opt-in plaintiffs is available from non-party subpoenas, nor does the court's opinion contain any analysis on the relevancy or proportionality applicable to such class discovery. The court merely sustained an undisputed objection and limited the production accordingly.

In contrast, this Court's prior decisions in *Kolasa v. Boes Solutions, Inc.*, No. 2:17-cv-01087-NBF-MPK (W.D. Pa.) are more analogous. There, this Court issued a hearing memo similar to that at issue here, ordering defense counsel to provide by January 15, 2018 the names, addresses and payroll reports for each technician and the master services agreements with the third-party providers. Ex. A. (Doc. 28).  The Court further acknowledged that "It is expected that the first two categories of information will need to be obtained from third party providers by Defendant." *Id.* at ¶ 9. BOS served subpoenas on those third parties, but one, Tier One, refused to produce information, stating its documents were of no relevance to Kolasa's action because no Tier One employee could be an employee of BOS. See Ex. B. (Doc. 34). The Court found these objections without merit. Ex. C (Doc. 36). Tier One subsequently produced documents related to the proposed class members. See *Kolasa*, No. 2:17-cv-01087-NBF-MPK at Doc. 37. All this was done prior to the plaintiff's motion for conditional certification. *See id.* at Doc. 45 (filed January 29, 2018).  The information held by Tier One applicable to the claims of Kolasa and the proposed class of solid controls consultants and was produced without any burden for Kolasa to show he was employed by Tier One (or any other vendor).  DPS' role is no different. It possesses documents relevant to the claims by Heaster and the putative class members that EQT was their employer and owed them overtime under the FLSA.  This information is no less relevant because it is held by a third party than by EQT.

**3.      There is no privity requirement under Rule 26.**

Courts allow class-related discovery prior to granting conditional certification because it allows

the parties to determine the extent of the class, the scope of the claims, and the potential damages and liability at issue. *See Parker v. ABC Debt Relief, Ltd. Co.*, 2011 WL 13156847, at *3 (N.D. Tex. Aug. 15, 2011) (noting that because of "the remedial purpose of the FLSA and the broad scope of discovery under Rule 26, the court determines that discovery of the compensation arrangement between defendants and potential opt-in-plaintiffs is both relevant and appropriate"). This reasoning is no less applicable where a plaintiff seeks the information in connection with mediation prior to conditional certification being granted. Simply put, a collective action plaintiff does not need to wait until conditional certification is granted to obtain discovery relevant to the claims of the proposed class members. The only barrier is proportionality under Rule 26. *See In re Schaefer*, 331 F.R.D. 603, 607 (W.D. Pa. 2019) ("The scope of discovery available from a subpoenaed nonparty is the same as the general scope of civil discovery under Rule 26"). In requiring some privity between Heaster and DPS, the Court misapplied the standard applicable to this relevant discovery.

Heaster established the information he seeks from these vendors is within the scope of permissible discovery. *See* Doc. 36. Indeed, this Court found as much. *See* Doc. 37 (emphasizing "this Court finds that the five requests for production of documents as issue are **clearly relevant to the underlying claims in this case and necessary for the mediation previously ordered by this Court**." (emphasis added)). DPS failed to show production of documents in their possession or control is unduly burdensome. Doc. 39. Its only argument was that "Heaster was not—and was not even alleged to be—an employee or contractor of DPS[.]" *Id.*

Again, the question raised in this case is the relationship between landmen and EQT (not DPS). Doc. 1, *passim.* And DPS admits it is one of the vendors that provided landmen to EQT. Further, EQT identified DPS as one of its vendors related to the potential class. DPS is, therefore, undoubtably in possession of responsive information related to the potential opt-ins (landmen who performed services for EQT). Where there has been no showing that the burden of compiling and

producing this information "outweighs its likely benefit," as contemplated by Rule 26(b), DPS may not withhold production. The Court's denial of the motion to compel not only conflicts with its order for Heaster to have the names of all landmen and the pay data for all landmen, but it also imposes a new, higher burden on discovery, it will inevitably increase disputes over routine discovery. Every third party subject to a subpoena will contest the scope of discovery, and escape production without any showing of undue burden. Instead, Heaster contends the focus should be on whether DPS had information related to EQT's liability, not whether DPS had potential liability to Heaster.

**4.      Conclusion.**

For these reasons, Heaster respectfully requests clarification of the Court's Order denying his Motion to Compel Compliance with a Third-Party Subpoena against DPS Land Services, LLC. Heaster further requests the opportunity to present these arguments before the Court. However, in light of recent events pertaining to the onset of the COVID-19 pandemic, he requests permission for a telephonic hearing before the Court.

**Dated: March 23, 2020**

Respectfully submitted,

/s/ *Andrew W. Dunlap*

**Andrew W. Dunlap**
Texas State Bar No. 24078444
**Taylor A. Jones**
Texas State Bar No. 24107823
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
adunlap@mybackwages.com
tjones@mybackwages.com

**AND**

**Joshua P. Geist**
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212

Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR THE PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on March 23, 2020, in accordance with the Federal Rules of Civil Procedure

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**