# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH DIVISION

| | |
|---|---|
| ADAM HEASTER, Individually and For Others Similarly Situated,<br><br>v.<br><br>EQT CORPORATION, | **Case No. 2:19-cv-01463-MPK**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br><br>Rule 23 Class Action |

## HEASTER'S OPPOSITION TO EQT'S MOTION TO STAY DISCOVERY (DOCS. 59-60)

**1.   SUMMARY**

EQT seeks to further delay this case while it attempts to lure the Court down the rabbit hole in its meritless pending Motion to Compel Arbitration (Docs. 56-57). As explained in Heaster's forthcoming Response to EQT's Motion to Compel Arbitration[1] and Motion for Leave to Amend (Doc. 63), **at best** EQT **might** be able to compel an insignificant portion of Heaster's claim to arbitration. While Heaster was employed by EQT for approximately nearly a year and a half, Heaster's arbitration agreement with Percheron (dated March 22, 2018) covers at most a few weeks at end of his employment with EQT (Heaster stopped working for EQT in April 2018).[2] Even that is unlikely, since EQT is not a party to the arbitration agreement it hopes to enforce (and neither is EQT Production for that matter). Further, Heaster "expressly limit[ed] his individual claims to those arising *prior* to [the] March 22, 2018" agreement, rendering EQT's slight chance of sending even some of

---

[1] Heaster's Response to EQT's Motion to Compel Arbitration (Docs. 56-57) is due on May 22, 2020. *See* Doc. 58.

[2] Heaster expressly denies that EQT may compel *any* of Heaster's claim to arbitration, as EQT (nor even EQT Production) was a party to the arbitration agreement it now seeks to enforce. Heaster merely notes that, at best, this agreement may apply prospectively, but whether such application extends beyond Percheron to EQT (or even EQT Production) is dubious.

1

Heaster's claim to arbitration moot, as Heaster is not pursuing these claims. Doc. 73 at ¶ 13. Accordingly, EQT cannot show the requisite good cause to stay discovery and delay this case. Indeed, its only basis for a stay is grounded in a dispositive motion that will not dispose of this entire case. Nor can EQT demonstrate responding to discovery causes it undue burden, especially where, *even if the Court sent this case to arbitration*, EQT would nevertheless be required to respond to discovery. The Court should reject EQT's delay tactics and deny its Motion to Stay Discovery (Docs. 59-60).

**2.     ARGUMENT & AUTHORITIES**

**A.     Rule 26 Stay of Discovery Standard.**

"A stay is not a matter of right," but rather is "an exercise of judicial discretion" whose propriety "is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). In determining whether to grant a stay, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Cessna v. REA Energy Cooperative, Inc.*, 258 F. Supp. 3d 566, 594 (W.D. Pa. 2017) (citing *Coffelt v. Fawkes*, 765 F.3d 197, 201 (3d Cir. 2014); *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)). The first two factors "are the most critical," and the party requesting the stay must demonstrate more than a "mere possibility" of relief or irreparable harm. *Nken*, 556 U.S. at 434-35 (citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id.* at 433-34 (citations omitted).

It is true that "district courts possess broad discretion to manage discovery." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995); *see In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001); *N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co., LLC*, No. 3:08-CV-288, 2011 WL

4571727, at *2 (W.D. Pa. July 13, 2011) (Gibson, J.). That said, "[m]otions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Coca-Cola Bottling Co. of Lehigh Valley v. Grol*, No. 92-7061, 1993 WL 13139559, at *2 (E.D. Pa. Mar. 8, 1993); *see Coyle v. Hornall Brewing Co.*, No. 08-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009); *In re Plastics Additives Antitrust Litig.,* No. 03-2038, 2004 WL 2743591, at *7 (E.D. Pa. Nov. 29, 2004) (a court has a responsibility to "keep its docket moving to provide litigants with a timely and effective resolution of their claims").

The party seeking a stay must therefore show "good cause." *Perelman v. Perelman*, No. 10-5622, 2011 WL 3330376 at *1 (E.D. Pa. Aug.3, 2011) ("The burden is on the party seeking the stay [of discovery] to show 'good cause.'"); *Gerald Chamales Corp. v. Oki Data Americas, Inc., et al.*, 247 F.R.D. 453, 454 (D.N.J. 2007) ("A protective order pursuant to Fed. R. Civ. P. 26(c) may only be issued if 'good cause' is shown."); FED. R. CIV. P. 26(c)(1) (establishing that the court may issue a protective order with respect to discovery only for "good cause"). "Good cause" requires a showing of a "particular need for protection." *Pearson v. Miller,* 211 F.3d 57, 72 (3d Cir. 2000). That is, the party seeking a stay must "demonstrate that disclosure will cause a defined and serious injury" by pointing to "substantiated specific examples." *Doe v. Provident Mutual Life and Accident Ins. Co.,* 176 F.R.D. 464, 469 (E.D. Pa. 1997); *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.*, No. 00-2284, 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002).

And "the mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay." *Gerald Chamales Corp.*, 247 F.R.D. at 454; *see also* FED. R. CIV. P. 26(d)(2)(A) ("[M]ethods of discovery may be used in any sequence …"). To the contrary, a party requesting a stay based on a pending dispositive motion must demonstrate that proceeding with discovery will be unduly burdensome. *Maher Terminals, LLC v. Port Auth. of New York & New Jersey*, No. 12-6090 KM,

3

2013 WL 2253532, at *3 (D.N.J. May 22, 2013). After all, "[i]n **any case** where a dispositive motion is filed in the early stages of the litigation, the parties might incur discovery costs that ultimately may be rendered unnecessary if the pending dispositive motion is granted." *Id.* (emphasis added). A stay should be denied where the party seeking a stay does "not explain with any specificity why the instant matter is different than any other case in which a dispositive motion has been filed, and thus, why the Court should grant its request to stay discovery." *Id.* (citing *Coyle*, 2009 WL 1652399, at *3 ("The party seeking a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay … will work damage to someone else.").

### B. EQT Failed to Show It Is Likely to Succeed on the Merits of its Motion to Compel Arbitration.

EQT cannot demonstrate its Motion to Compel is likely to succeed because (1) Heaster expressly limited his claims to those predating March 22, 2018 and any potentially effective arbitration agreement, *see* Doc. 73 at ¶ 13; and (2) EQT is not a party, signatory, nor third party beneficiary of any arbitration agreement between Heaster and Percheron and cannot enforce someone else's agreement.

i. The Arbitration Agreement Does Not Apply Retroactively.

Courts in the Third Circuit routinely refuse to read retroactivity into arbitration agreements. "If the parties intend retroactive application, the arbitration agreement includes broad temporal language." *Herzfeld v. 1416 Chancellor, Inc.*, 2015 WL 4480829, at *4 (E.D. Pa. July 22, 2015) (refusing retroactive application of an arbitration agreement stating "any dispute [that] arises out of this agreement it shall be settled by arbitration" because "there is no [] evidence of retroactive application") (citing *Levin v. Aims and Associates, Inc.*, 634 F.3d 260, 260-61 (4th Cir. 2011)); *see also Mendez v. Puerto Rican Int'l Companies, Inc.*, 438 F. App'x 161, 164 (3d Cir. 2011) ("Arbitration agreements generally do not reach back to preexisting disputes without indication that such disputes are within the scope of the arbitration clause.").

4

Percheron's March 22, 2018 Pre-Assignment Agreement with Heaster does not include the "broad temporal language" required for retroactive application. Instead, the Pre-Assignment Agreement provides, in pertinent part:

> I [Heaster] acknowledge and agree that the sole and exclusive forum in which to resolve any dispute (to the … with my Employer [Percheron] and/or Company [EQT Production] shall be in final and binding arbitration in accordance with the provisions below: (A) Any controversy, claim, or dispute arising out of or relating to my work in connection with the Company [EQT Production] shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the [AAA] … (B) The arbitration shall be governed by the [FAA], shall be held in Pittsburgh, Pennsylvania, and shall be conducted before a panel of three (3) arbitrations… <u>I WAIVE ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW … INCLUDING DISPUTES INVOLVING … WAGES, HOURS, BENEFITS, AND OTHER TERMS AND CONDITIONS OF MY EMPLOYMENT</u>…

Doc. 55-B (emphasis in original). Like the agreement in *Herzfeld*, Heaster's Pre-Assignment Agreement with Percheron lacks the "broad temporal language" or "any other evidence of retroactive application." 2015 WL 4480829, at *4. To the contrary, Percheron's agreement with Heaster is titled a "**Pre-Assignment … Arbitration Agreement**." Doc. 55-B (emphasis in original). Indeed, the agreement's terms establish that it is forward looking. *Id.* (noting, *e.g.,* that if "any dispute arises … I <u>will inform</u> [Percheron]"). Heaster did not "agree[] in advance" to submit his claims arising prior to March 22, 2018 to arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Accordingly, the arbitration agreement, at best, could only apply to Heaster's post-March 22, 2018 claims, and Heaster expressly disavowed these claims. *See* Doc. 73 at ¶ 13.

    ii.    <u>EQT Cannot Enforce Heaster's Agreement with Percheron.</u>

The Third Circuit has a two-step process for deciding whether a party may be compelled to arbitrate under the FAA: "'(1) whether there is a valid agreement to arbitrate **between the parties** and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid

5

agreement,' **i.e., the arbitrability of the claim**." *Baker v. New Prospect Co.*, No. CV 19-63, 2019 WL 3252744, at *1 (W.D. Pa. July 19, 2019) (emphasis added) (quoting *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)).

EQT says Heaster "must" prove EQT was his "joint employer" to succeed on his FLSA claims. Doc. 57 at *1-3. But Heaster has not alleged, nor must he prove, EQT was his "joint employer." *See* Doc. 73. "**[A] party must plead at least an employment relationship with each employer before the issue of joint employment may be determined**." *Joaquin v. Coliseum, Inc.*, A-15-CV-787-LY, 2016 WL 3906820, at *3 (W.D. Tex. July 13, 2016), *report and recommendation approved sub nom.* at 2016 WL 7647630 (W.D. Tex. Aug. 2, 2016) (emphasis added). EQT hopes the Court will ignore its gross mischaracterization of Heaster's actual claim—that EQT was his "employer" and failed to pay him overtime. To make this determination, the Court "must look to the economic realities, not the labels, of the relationship between the workers and defendants." *Acosta v. Heart II Heart, LLC*, No. 2:17-CV-1242, 2019 WL 5197329, at *6 (W.D. Pa. Oct. 15, 2019); *Sofranko v. Nw. Mut. Life Ins. Co.*, No. 2:06-CV-1657, 2008 WL 145509, at *4 (W.D. Pa. Jan. 14, 2008).

Even assuming EQT could enforce Heaster's agreement with Percheron, that agreement does not extend to disputes between Heaster and EQT. The arbitration agreement unambiguously limits arbitrable disputes to those arising out of Heaster's work in connection with Percheron and/or EQT Production—there is no agreement to arbitrate any dispute against EQT. *See* Doc. 55-B. Therefore, unless the Court is willing to ignore the plain language of both Heaster's Second Amended Complaint (Doc. 73) **and** his Pre-Assignment Agreement with Percheron, EQT's Motion to Compel Arbitration will fail. Thus, EQT failed to demonstrate it is likely to succeed on the merits.

C.     **EQT Failed to Demonstrate "Good Cause" to Stay Discovery.**

EQT asks the Court to adopt a default rule that the filing of a dispositive motion warrants an automatic stay of discovery. But courts routinely reject such arguments. *See, e.g., Gerald Chamales Corp.*,

247 F.R.D. at 454-55 ("[I]f the Court accepts defendants' argument that all depositions should be stayed pending the decision on its dispositive motion, then it would in effect be ruling that every time a request to compel arbitration is filed good cause exists to issue a protective order to stop depositions while the request is pending. **This is not the law**." (emphasis added)); *Spathos v. Smart Payment Plan, LLC*, No. 15-8014, 2016 WL 9211648, at *1 (D.N.J. Apr. 25, 2016) (denying motion to stay discovery pending the court's ruling on a motion to compel arbitration); *Maher Terminals*, 2013 WL 2253532, at *3 (denying motion to stay discovery pending the court's ruling on a motion to dismiss).

Indeed, all of the cases EQT's cites are inapplicable here. *See* Doc. 60 at *4 (citing *Klepper v. SLI, Inc.*, 45 Fed. Appx. 136 (3d Cir. 2002); *Marciano v. MONY Life Ins. Co.*, 470 F. Supp. 2d 518 (E.D. Pa. 2007); *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 61 F.R.D. 8 (D.V.I. 1973)). For example, in *Klepper*, the parties were all signatories to the arbitration agreement. 45 Fed. Appx. at 138. The district court ordered the parties "to **complete** discovery on all pending issues"—apparently before it would even rule on the motion to compel arbitration. *Id.* In fact, the District Court specifically had ordered the parties to conduct discovery into the precise issue on which defendant moved for arbitration (a stock option incentive plan). *Id.* Thus, the Third Circuit case was dealing with an order mandating that all discovery be completed prior to ruling on arbitrability, an order that obviously is not present in this case. *Id.* Moreover, prior to EQT belatedly moving to compel arbitration and attempting to enforce an agreement to which EQT is not a party, signatory, nor a third-party beneficiary, the parties engaged in **substantial** class discovery, as proposed by EQT and adopted by the Court. *See* Docs. 23-24. Recall, EQT says it did not even know any arbitration agreement existed. *See* Doc. 60 at *2 ("After this case was initiated, EQT discovered that Plaintiff had entered an arbitration agreement with [Percheron]."). Thus, unlike the *Klepper* defendant, EQT therefore had no legitimate expectation that it would be excused from any aspect of standard discovery. EQT cannot point to any legitimate harm it will

7

experience that it has not already experienced—i.e., engaging in the inherent aspects of litigation. EQT simply does not want to respond to *this* discovery right now.

Further, in *Marciano*, the Third Circuit ordered a stay of discovery pending defendants' interlocutory *appeal*. 470 F. Supp. 2d at 522. And even in doing so, it did not stay discovery related to the issue of arbitrability. *Id.* This hardly establishes that any time a party cries arbitration, an entire stay of discovery is warranted (especially since the only mention of staying discovery is in dicta). *Id.* Further, EQT requests a complete stay of discovery simply because it has filed a meritless motion to compel arbitration, attempting to enforce **someone else's** agreement.

Likewise, in *Econo-Car*, the parties were both signatories to or otherwise expressly covered by the arbitration agreement at issue. 61 F.R.D. at 9. Indeed, plaintiff attached the agreement to his complaint *in which plaintiff sought to compel arbitration. Id.* Thus, it comes as no surprise that the Court granted plaintiff's protective order since there was absolutely no doubt that the matter was intended for arbitration. *Id.* Heaster's claim is not an action to compel arbitration. *See* Doc. 73. And unlike the unambiguous nature of defendant's agreement to arbitrate in *Econo-Car*, Heaster did not agree to arbitrate his claims in this case with EQT. *See* Doc. 55-B.

EQT failed to identify any injury that might occur absent a stay beyond simply having to expend some, unspecified amount of resources to answer basic discovery. Unfortunately for EQT, that is simply inevitable since EQT has no chance of disposing of *all* of Heaster's claim. Accordingly, EQT cannot satisfy the first two factors, and the Court's analysis need not go any further. *See Nken*, 556 U.S. at 436 (it is only after "**an applicant satisfies the first two factors**" that "the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interests." (emphasis added)).

    **D.    A Stay Would Severely Prejudice the Putative Class Members and Fly in the Face of the Broad Remedial Goals of the FLSA.**

Although the Court need not reach the third and fourth factors due to EQT's failure to satisfy the first two, the prejudice to the Putative Class Members caused by any stay weighs against EQT's request for a stay. While EQT would experience virtually no harm should the Court deny its request to stay discovery, such a delay prejudices the Putative Class Members because their statute of limitations continues to run until they affirmatively opt into this collective action. 29 U.S.C. § 256 (the FLSA statute of limitations runs until an employee files a consent). In FLSA cases, such as this, time is of the essence because as each day passes without notice provided to Putative Class Members, some class members may lose their right to sue. At a minimum, Putative Class Members' claims will be diminished. Unlike EQT's hypothetical injury (or lack thereof entirely), the prejudice to the Putative Class Members is undeniable.

Finally, for these same reasons would a stay fly in the face of the broad remedial goals of the FLSA. Thus, staying this matter would cut against public interest and sweeping goals that Congress envisioned when enacting the FLSA.

**3.    CONCLUSION**

For the foregoing reasons, EQT failed to meet its burden of demonstrating a stay of all discovery pending a ruling on its meritless Motion to Compel Arbitration is warranted. Thus, the Court must deny EQT's Motion.

**Dated: May 20, 2020**

Respectfully submitted,

By: */s/ Taylor A. Jones*
      **Michael A. Josephson**
      PA Bar No. 308410
      **Andrew W. Dunlap**
      Texas Bar No. 24078444
      **Taylor A. Jones\***
      Texas Bar No. 24107823
**Josephson Dunlap**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com
\**Admitted Pro Hac Vice*

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**Bruckner Burch pllc**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Joshua P. Geist**
PA ID No. 85745
**Goodrich & Geist PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com

**Attorneys in Charge for Plaintiff**

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on May 20, 2020, in accordance with the Federal Rules of Civil Procedure.

        */s/ Taylor A. Jones*
        **Taylor A. Jones**